**Charlene MEDINA, Plaintiff,**

v.

**ADECCO, et al., Defendants.**

**Civil No. 06–2126 (GAG).**

United States District Court, D. Puerto Rico.

June 12, 2008.

Pedro J. Landrau–Lopez, San Juan, PR, for Plaintiff.

Ricardo Pizarro, Pizarro Law Firm, P.SC., San Juan, PR, for Adecco.

Eva Yanira Mundo–Sagardia, Enrique A. Del Cueto–Perez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Popular Finance.

### OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

Plaintiff Charlene Medina filed this action against Adecco and Popular Finance alleging pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). She also asserts supplemental claims under Puerto Rico law. Presently before the court are Popular Finance's and Adecco's motions for summary judgment (Docket Nos. 75, 78). After reviewing the relevant facts and applicable law, the court **GRANTS IN PART** and **DENIES IN PART** Popular Finance's motion for summary judgment (Docket No. 75) and **GRANTS** Adecco's motion for summary judgment (Docket No. 78).

### I. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "An issue is genuine if it may reasonably be resolved in favor of either party at trial, and material if it posses[es] the capacity to sway the outcome of the litigation under the applicable law." *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006) (alteration in original) (citations and internal quotation marks omitted).

The moving party bears the initial burden to demonstrate the lack of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In order to defeat summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and give that party the

benefit of any and all reasonable inferences. *Id.* at 255, 106 S.Ct. 2505. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. *Id.*

In cases involving questions of motive or intent, the movant's burden is particularly rigorous. Unsettled issues regarding motive and intent will often preclude summary judgment. *See Lipsett v. Univ. of P.R.,* 864 F.2d 881, 895 (1st Cir.1988). Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1st Cir.2006) (quoting *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir. 2003)). The court should deny summary judgment when the non-moving party "can point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus." *Lipsett,* 864 F.2d at 895.

## II. Factual Background

In early 2003, Medina began working for Adecco, a company that provides temporary staffing for its clients, including Popular Finance. During her employment, Medina signed several Adecco temporary employment contracts to work myriad locations including Keebler Company, Farmacias El Amal, Phillip Morris, and Popular Finance. Adecco maintained an Equal Employment Opportunity ("EEO") policy of which it made Medina award.

Popular Finance's business needs dictated whether it used Adecco's services. A Popular Finance business unit or department would contact Celeste Cardoza, Popular Finance's Director of Human Resources, if it had a business need for additional staffing. Cardoza then contacted Adecco, or another staffing firm, to arrange the temporary staffing to satisfy the need.

At some point in 2003, Popular Finance requested personnel from Adecco to satisfy its business needs. Adecco first assigned Medina to work at Popular Finance on June 10, 2003. Medina signed a one-month Adecco contract to provide temporary services to Popular Finance; the contract expired on July 10, 2003. Medina initially worked a part-time schedule at Popular Finance. She switched to full-time at some point during her first contract.

Following the expiration of the first contract, Medina signed six additional temporary contracts to provide services to Popular Finance.[1] Each contract required Medina to comply with Popular Finance's rules, norms, and work schedule. Medina's final contract expired on June 30, 2004. Popular Finance did not renew Medina's temporary employment contract after July 2004.

During her time at Popular Finance, Medina primarily worked as a customer representative at Popular Finance's call center in Ponce. Between January and March 2004, Medina's tasks mainly focused on the Mendoza Finance Project. The Mendoza Finance Project ended in March at which time the volume of call center work began to decrease.

Popular Finance directly employed only one customer representative—Mayra Rodríguez; all other customer representatives,

---

[1] The contracts pertained to the following periods: (1) July 11, 2003 to September 30, 2003; (2) October 1, 2003 to November 30, 2003; (3) December 1, 2003 to January 30, 2004; (4) February 1, 2004 to April 30, 2004; (5) May 1, 2004 to May 31, 2004; and (6) June 1, 2004 to June 30, 2004. Docket No. 75–3, ¶ 5.

including Medina, were temporary employees hired through staffing firms. Rodríguez supervised and evaluated the call center employees. She positively evaluated Medina on six occasions between January and June 2004.[2] Anna M. Massol directly supervised Rodríguez. Massol, a Popular Finance administrative official, oversaw the call center group in which Medina and Rodríguez worked.

Medina learned of her pregnancy on January 5, 2004. Soon thereafter she informed her Popular Finance co-workers and supervisor, Rodríguez, of the pregnancy. Medina's co-workers and supervisor congratulated her. Medina also informed Adecco of the pregnancy in January 2004.

Popular Finance required all call center customer representatives to work a rotating schedule and to work "from time to time on Saturdays." Docket No. 75–3, ¶ 25. Medina requested to work on some, not all, Saturdays. Between February 9, 2004 and June 6, 2004, Medina worked at least nine of the seventeen Saturdays. She never refused to work on Saturday and missed only one Saturday Popular Finance scheduled her to work.

On or after May 11, 2004, Medina requested certain pregnancy-related changes in her working conditions. She provided Popular Finance and Adecco with a medical certificate highlighting her medical issues. The certificate stated that Medina had been under the physician's care for prenatal hypoglycemia and that she needed to take breaks to eat snacks and to take lunch at noon. Popular Finance complied with the physician's recommendations.

In response to another request, Popular Finance transferred Medina to the work station closest to the restroom. Medina requested this transfer because she needed to take frequent restroom breaks due to her pregnancy. Also in response to a request, Popular Finance placed Medina on a fixed, rather than rotating, work schedule. This schedule change occurred at some point in May 2004. All other call center employees worked a rotating schedule.

In June 2004, Massol and Rodríguez informed Cardoza of issues they observed with Medina's performance. First, they told Cardoza that Medina continued to complain about her schedule notwithstanding her fixed work schedule. They viewed her complaints as indicating a lack of time flexibility, Second, they described a disagreement Medina had with a training instructor. Finally, they described attitude problems they believed Medina showed toward her co-workers. Specifically, Massol and Rodríguez told Cardoza that Medina did not greet her co-workers when she arrived, she always seemed upset, she did not interact with her co-workers, and she gave the impression that she resented the assignment of task to new employees. Medina denies having attitude problems at work.

The incident with the training instructor occurred in March 2004. One afternoon, a call regarding a client loan came in to the call center. Medina's co-worker prepared to transfer the call to her. Medina declined to take the call because she had already turned her computer off. The training instructor told her that she should have gone the extra mile. Rodríguez witnessed the incident. Medina denies she screamed at or offended anyone during the March incident.

---

**2.** Rodríguez evaluated Medina on January 5, 2004; February 2, 2004; March 18, 2004; April 2, 2004; May 3, 2004; and June 2, 2004. Medina and Rodríguez signed the January, February, and March evaluations on March 24, 2004. They signed the April, May, and June evaluations on June 5, 2004. Docket No. 75, Exh. XVII(A)-(F).

Rodríguez evaluated Medina's performance on a monthly basis. Massol reviewed the evaluations. None of the evaluations mention Medina's lack of flexibility, the March 2004 incident, or attitude problems observed in the workplace. All the evaluations included positive feedback regarding Medina's performance. Medina's most recent evaluation is dated June 2, 2004, just weeks before her termination.

Cardoza ultimately made the decision to terminate Medina's assignment. She did not review Medina's evaluations in making her determination. Cardoza relied upon the information Rodríguez and Massol provided regarding Medina's flexibility, her attitude, and the March 2004 incident. She blindly followed Massol's recommendation that Popular Finance terminate Medina's assignment. Cardoza communicated her decision to Adecco. María Ruíz at Adecco then notified Medina of Popular Finance's decision. Ruíz told Medina that Popular Finance cancelled the contract because she lacked the flexibility the company required.

A few days after Medina's assignment at Popular Finance ended, Ruíz called her and offered her an assignment at AOL. She later offered her a position at the Cooperativa de Coamo. Medina declined the AOL assignment because it assignment involved standing up. She turned down the Cooperativa position because it was far from her home.

Medina gave birth to her daughter one-and-half months after her Popular Finance assignment ended. Adecco paid Medina maternity leave benefits.

## III. Analysis of Claims Against Popular Finance

Medina alleges that Popular Finance unlawfully terminated her because of her pregnancy. She also alleges that Popular Finance subjected her to a hostile work environment due to her pregnancy. Popular Finance moves for summary judgment arguing that: (1) Medina has failed to establish a prima facie case of a discriminatory termination; (2) Medina has failed to demonstrate that Popular Finance's nondiscriminatory reason for terminating her employment is pretext for pregnancy discrimination; and (3) Medina has failed to establish a hostile work environment claim. Popular Finance also seeks summary judgment on Medina's supplemental law claims.

### A. Discriminatory Termination

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C.2000e–2(a)(1). The Pregnancy Discrimination Act of 1978 extended Title VII's protection against discrimination to specifically include discrimination "on the basis of pregnancy." 42 U.S.C. § 2000e(k). "It is settled under Title VII that a employer may not discharge an employee based on the categorical fact of her pregnancy." *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 424 (1st Cir.1996). An employer may, however, discharge a pregnant employee "if it does so for legitimate reasons unrelated to her pregnancy." *Id.*

■ Absent direct evidence of discrimination, the court applies a burden shifting-framework to determine whether plaintiff can prove intentional discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The initial burden falls upon plaintiff who must make the following prima facie showing: (1) she was pregnant or indicated an intention to become pregnant; (2) she performed her job satisfactorily; (3) the employer took an adverse employment action against her; and (4) the em-

ployer continued to have her duties performed by a comparably qualified person.[3] *See F.W. Morse*, 76 F.3d at 421. The First Circuit has described the prima facie case as "not onerous," "easily made," and a "small showing." *Kosereis*, 331 F.3d at 213; *see also Greenberg v. Union Camp Corp.*, 48 F.3d 22, 26 (1st Cir.1995) (noting initial prima facie burden is "not especially burdensome"); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 15 n. 4 (1st Cir.1994) (describing plaintiff's burden as "relatively light").

Plaintiff's satisfaction of her prima facie burden creates a rebuttable presumption that discrimination prompted the challenged adverse employment action. *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 153 (1st Cir.1990). Defendant may rebut this presumption by articulating a non-discriminatory reason for the adverse employment action. *F.W. Morse*, 76 F.3d at 421 (noting only burden of production shifts to employer).

Plaintiff must then point to sufficient evidence to demonstrate that the employer's proffered reason is a mere pretext and that the true reason is discriminatory. *Id.* Ultimately, the court must decide "whether, viewing the 'aggregate package of proof offered by the plaintiff' and taking all inferences in [her] favor, [she] has raised a genuine issue of fact as to whether the termination of [her] employment was motivated by [pregnancy] discrimination." *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 431 (1st Cir.2000) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991)).

### 1. Medina's Prima Facie Case

Popular Finance challenges the second prong Medina's prima facie case. Specifically, Popular Finance argues that Medina's alleged lack of time flexibility, her alleged attitude problems, and the March 2004 training incident demonstrate her inadequate performance. The record contains evidence, however, that Medina adequately performed her job and met Popular Finance's job expectations. First, Popular Finance repeatedly renewed her assignment; the most recent renewal occurred on June 1, 2004. Such evidence indicates that Medina was satisfying Popular Finance's performance expectations. Additionally, Medina received several positive performance evaluations including one signed on June 5, 2004, less than one month before Popular Finance terminated her assignment. The First Circuit has repeatedly held that proof of positive performance evaluations satisfies the "performance" element of the prima facie case. *See Rodriguez–Torres v. Caribbean Forms Mfr.*, 399 F.3d 52, 62 (1st Cir.2005); *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1092 (1st Cir.1995); *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 261 (1st Cir.1994); *Keisling v. SER–Jobs for Progress*, 19 F.3d 755, 761 (1st Cir.1994); *Stratus Computer*, 40 F.3d at 15 n. 4. Mindful that Medina's burden is "not onerous" and "easily made," the court concludes that Medina's

---

**3.** Popular Finance argues that Medina's prima facie case fails because she lacks evidence that Popular Finance treated her differently that non-pregnant employees. A disparate treatment plaintiff, however, need not demonstrate as part of her prima facie case that she was treated differently than similarly situated employees outside the protected class. First Circuit precedent establishes that, in disparate treatment cases, the court should analyze comparative evidence at the pretext stage not the prima facie case stage. *See Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003); *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 584 (1st Cir.1999), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir.1999).

evidence raises a triable issue regarding the adequacy of her performance. *Kosereis*, 331 F.3d at 213.

## 2. Popular Finance's Legitimate, Nondiscriminatory Reason

Popular Finance articulates a legitimate, nondiscriminatory reason for its decision not to renew Medina's assignment. Specifically, Popular Finance attributes the nonrenewal to the following: (1) Medina's alleged lack of time flexibility; (2) her alleged attitude problems; (3) the training incident; and (4) a decrease in call center work resulting from the termination of the Mendoza Finance Project. Popular Finance submits evidence, primarily the decision-makers' deposition testimony, to support its reasons. With this evidence, Popular Finance rebuts the presumption created by Medina's prima facie evidence and shifts the burden of persuasion back to Medina.

## 3. Pretext

■ In the final stage of the analysis, the burden shifts back Medina to show that Popular Finance's alleged justification is not the true reason for the adverse employment action but rather a mere pretext for pregnancy discrimination. Popular Finance argues that Medina fails to satisfy this burden. The court has considered all of the parties' arguments and concludes that Medina presents sufficient evidence to withstand summary judgment on the pretext issue.

At the pretext stage, the court considers the ultimate question in a discrimination case: did plaintiff present sufficient evidence that defendant's stated reason was a pretext for discrimination? *See Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 674 (1st Cir.1996). To avoid summary judgment, plaintiff must present sufficient evidence to create a genuine issue of fact with respect to two issues: whether the legitimate reasons Popular Finance offered were not its true reasons and whether the real reason was discrimination. *See Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d at 25–26; *Stratus Computer*, 40 F.3d at 16 (1st Cir.1994). In certain circumstances, discriminatory animus may be inferred from the simple showing of pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ Title VII does not prevent an employer from terminating an employee for any reason (fair or unfair) so long as the decision to discharge the employee does not stem from unlawful discriminatory animus. The court does not sit as a super personnel department, assessing the merits and rationality of the employer's legitimate, nondiscriminatory reasons. In evaluating pretext, the court must focus on whether the employer believed its stated reasons to be credible and reasonable. The inquiry goes to the subjective belief of those making the termination decision; the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs. *See Ronda Peréz v. Banco Bilbao Vizcaya Argentaria*, 404 F.3d 42, 45 (1st Cir.2005); *Mulero–Rodriguez*, 98 F.3d at 674.

The First Circuit has recognized that "there is no 'mechanical formula' for finding pretext." *Che v. MBTA*, 342 F.3d 31, 39 (1st Cir.2003) (quoting *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 6 (1st Cir.2000)). It has also recognized that the pretext inquiry depends entirely on the individual facts. *Id.* Consequently, the First Circuit warns that courts must be " 'particularly cautious' in granting summary judgment on a discrimination claim when the case boils down to whether the employer's stated reasons are pretextual." *Kosereis*, 331 F.3d at 216

(quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir.1998)); *see also Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st Cir.2008) (denying summary judgment due to factual disputes regarding motivation behind adverse employment action); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000) ("[C]ourts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent.").

Plaintiff may show pretext by highlighting "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted non-discriminatory reasons." *Santiago–Ramos*, 217 F.3d at 56. Here, Medina has presented evidence of weaknesses, implausibilities, and inconsistencies upon which a fact finder could infer pretext. She points out that none of her evaluations mention her lack of flexibility, attitude problems, or the March 2004 incident. Her positive evaluations, she contends, indicate the she satisfied Popular Finance's performance requirements. Medina further highlights that she received no warning, admonishment, or punishment for any of her alleged performance issues. A reasonable jury, relying upon this evidence, could question the veracity of Popular Finance's performance-related justifications for terminating Medina.

The court agrees that Medina's positive evaluations, which omit any mention of her performance issues, suggest pretext. Popular Finance argues that Medina's positive performance evaluations do no demonstrate pretext because "flexibility and attitude were not aspects specifically assessed in Popular Finance's performance evaluations." Docket No. 104, p. 2. Popular Finance offers no record citation for this assertion. Moreover, the court concludes that Popular Finance's assertion at best creates a triable issue of fact regarding Medina's performance and Popular Finance's reasons for terminating her assignment. The court further notes that Massol's testimony indicates that "attitude could fall within quality or effort," categories on the evaluation form. Docket No. 76, Exh. XV, p. 17.

Medina also highlights weaknesses or inconsistencies in Popular Finance's Mendoza Finance Project-related justification for terminating her assignment. Popular Finance contends that it terminated Medina due in part to a decrease in call center work volume; the decrease began in March when the Mendoza Finance Project ended. Notwithstanding, neither Cardoza nor Massol mentioned this justification when initially asked why Popular Finance terminated Medina. Massol explained that she recommended the termination based principally on Medina's time flexibility and attitude issues. She later acknowledged a reduction in call center volume but never explained the role it played in her decision to recommend Medina's termination. Cardoza explained that she blindly followed Rodríguez and Massol's recommendations regarding Medina's employment. She repeatedly stated that she made her decision based upon only what Rodríguez and Massol told her—that they had decided to cancel Medina's contract. She merely rubber-stamped their decision. Cardoza initially offered no work volume-related explanation for termination; only later in her deposition, during cross-examination, did she suggest that a decrease in call center work influenced the decision. On such a record, triable issues remain regarding the true role the decreasing call center work played in Popular Finance's decision to terminate Medina; a reasonable jury could conclude the decreasing work justification is pretextual.

Popular Finance argues that Cardoza, who made the final decision to terminate Medina, genuinely believed the nondiscriminatory reasons given to justify Medina's termination. *See Mulero–Rodríguez*, 98 F.3d at 674 ("[T]he issues is not whether [the employer's] reasons ... were real, but merely whether the decisionmakers ... believed them to be real."). Accordingly, Popular Finance contends, summary judgment in its favor is appropriate. The record reveals, however, that Cardoza relied entirely upon Rodríguez and Massol's recommendations with respect to Medina's employment. She made her decision based upon only what they informed her, and she blindly followed their recommendation. Because Cardoza merely rubber-stamped Rodríguez and Massol's recommendation, Popular Finance's argument fails.

Medina's evidence raises triable issues regarding whether Popular Finance's non-discriminatory reasons are pretextual. This proof of pretext combined with the fact that Medina was seven months pregnant and quickly approaching the time at which she would not be available to Popular Finance constitutes circumstantial evidence of pregnancy discrimination. The court concludes that, viewing her aggregate package of proof and taking all inferences in her favor, Medina has raised a triable issue regarding whether pregnancy-based animus motivated Popular Finance's termination decision.

The court notes that Popular Finance offers evidence tending to show discrimination did not motivate the decision to terminate Medina's assignment. For example, Popular Finance repeatedly renewed Medina's contract and gave her positive evaluations after she announced her pregnancy which may suggest a lack of pregnancy-based animus. It also provided her several pregnancy-related accommodations. The termination of Medina's assignment may ultimately prove to have been innocent. Medina has, however, raised genuine issues of material fact sufficient to withstand summary judgment. A jury should be allowed to determine whether discriminatory animus motivated Popular Finance's decision. Accordingly, the court denies Popular Finance's motion for summary judgment on Medina's Title VII discriminatory termination claim.

## B. Hostile Work Environment

■ To succeed in a hostile work environment claim, plaintiff must show the following: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and the victim did in fact perceive it to be so; and (6) some factual basis for employer liability exists. *See Valentin–Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir.2006) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001)).

■ In characterizing the hostile or abusive workplace, courts have drawn a continuum between commonplace indignities and actionable harassment. Offhand remarks, simple teasing, tepid jokes, and isolated incidents are at the commonplace indignities end of the continuum. This type of behavior, standing alone, usually does not amount to a hostile work environment. Severe or pervasive discriminatory remarks, ridicule, and intimidation fall at the other end of the continuum and may support a jury verdict finding a hostile work environment. *Noviello v. City of*

*Boston,* 398 F.3d 76, 92 (1st Cir.2005); *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 19 (1st Cir.2002); *Figueroa Reyes v. Hosp. San Pablo del Este,* 389 F.Supp.2d 205, 213 (D.P.R.2005). To assess whether conduct is sufficiently severe or pervasive to create a hostile environment, the court must consider the totality of the circumstances. There is no mathematically precise test used to determine whether a plaintiff has demonstrated sufficiently severe or pervasive harassment. *See Pomales v. Celulares Telefónica, Inc.,* 447 F.3d 79, 83 (1st Cir.2006) (citing *Kosereis,* 331 F.3d at 216). Factors the court should consider include "the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Medina bases her hostile work environment claim on the following allegations: (1) each time Medina took one of her frequent pregnancy-related bathroom breaks, Rodríguez commented, "there she goes again to the bathroom;" and (2) Rodríguez was upset because Medina required a snack break every two hours due to gestational diabetes. Docket No. 86, p. 15. These allegations fail to support a pregnancy-based hostile work environment claim for several reasons.

First, the summary judgment record contains no evidence to support Medina's allegations. The allegations appear only in Medina's memorandum; they do not appear in her statement of facts supported by a record citation.[4] In her memorandum, she supports the allegations with only a citation to her unverified complaint. At the summary judgment stage, "a liti-gant 'may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make of the requisite issue of material fact.' " *Fragoso v. Lopez,* 991 F.2d 878, 887 (1st Cir.1993) (quoting *Kelly v. United States,* 924 F.2d 355, 357 (1st Cir.1991)). Medina offers no material of evidentiary weight to support her hostile work environment claim.

■ Second, Medina does not allege conduct that rises to the level of actionable harassment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (explaining simple teasing, offhand comments, and isolated incidents will not amount to change in terms and conditions of employment); *Noviello,* 398 F.3d at 92 (noting rudeness and ostracism insufficient to support a hostile work environment claim). While it may have occurred repeatedly, the conduct Medina describes was neither severe, nor humiliating, nor physically threatening. It was not sufficiently severe or pervasive to alter the conditions of her employment. Moreover, Medina presents no evidence to suggest that the conduct negatively affected her work performance. *See Pomales,* 447 F.3d at 83 (granting summary judgment where record contained no evidence that conduct negatively affected plaintiff's ability to work); *Lee–Crespo v. Schering–Plough Del Caribe, Inc.,* 354 F.3d 34, 46 (1st Cir.2003) (noting absence of evidence to show harassment impeded plaintiff's work performance). The absence of such evidence weighs against finding an actionable hostile work environment.

Medina failed to present evidence to sustain a prima facie case of sexual harassment against Popular Finance. She offers no evidence to demonstrate conduct suffi-

---

**4.** The court has no independent duty to search the record for evidentiary support.

*See* L. Cv. R. 56(e).

ciently severe or pervasive abusive as to constitute a pregnancy-based hostile work environment. Therefore, the court dismisses her Title VII hostile work environment claim.

### C. Supplemental Claims

Medina alleges Puerto Rico law claims arising out of the same nucleus of facts as her Title VII claim. Specifically, she alleges that Popular Finance violated the following Puerto Rico laws: Law 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29, §§ 185a–185m; Law 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, §§ 146–151; Law 69 of July 6, 1985, as amended, P.R. Laws Ann. tit. 29, §§ 1321–1341; Law 3 of March 13, 1942, as amended, P.R. Laws Ann. tit. 29, §§ 467–474; and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Popular Finance seeks summary judgment on each of Medina's Puerto Rico law claims.

#### 1. Law 80

Law 80, Puerto Rico's wrongful dismissal statute, provides relief to employees terminated "without good cause." P.R. Laws Ann. tit. 29, § 185a. Under Law 80, an employee bears the initial burden of alleging unjustified dismissal and proving actual dismissal. If the employee satisfies this burden, then the employer must prove, by a preponderance of the evidence, that it discharged the employee for good cause. *Alvarez–Fonseca v. Pepsi Cola of P.R.*, 152 F.3d 17, 28 (1st Cir.1998).

Popular Finance challenges Medina's Law 80 claim on two grounds. First, Popular Finance argues that only Adecco, and not Popular Finance, is potentially liable to Medina under Law 80. In Popular Finance's view, only a temporary employment company (Adecco), and not a client company (Popular Finance), qualifies as an "employer" for Law 80 purposes. Second, Popular Finance asserts that it terminated

Medina's assignment for just cause. Neither of Popular Finance's arguments provides a basis upon which to grant summary judgment.

■ Law 26 of July 22, 1992, P.R. Laws Ann. tit. 29, §§ 575–575e, regulates temporary employment companies. Under Law 26, whoever violates the wrongful dismissal statute, be it the temporary employment company or the client company, incurs in liability. *Id.* § 575b. Accordingly, if Popular Finance, the client company, terminated Medina's assignment without just cause, it may be liable to her under Law 80. Popular Finance's argument that it cannot incur Law 80 liability to a temporary employee fails.

■ Popular Finance's argument that it terminated Medina's assignment for just cause also fails. Triable issues remain regarding the real reason behind Popular Finance's decision to terminate Medina's assignment. These triable issues preclude the entry of summary judgment in Popular Finance's favor on Medina's Law 80 claim.

#### 2. Laws 100, 69, and 3

Law 100 is Puerto Rico's general employment discrimination statute. P.R. Laws Ann. tit. 29, § 146. Law 69 specifically prohibits gender discrimination. *Id.* § 1321. Law 3 protects employees from pregnancy-related adverse employment actions. *Id.* § 469.

The Puerto Rico Supreme Court has recognized that Law 100 is more plaintiff-friendly than its federal counterpart, Title VII. *See Dominguez v. Eli Lilly & Co.*, 958 F.Supp. 721, 744 (D.P.R.1997) (citing *Ibanez v. Molinos de P.R., Inc.*, 14 P.R. Offic. Trans. 58, 114 D.P.R. 42 (1983)). While Title VII and Law 100 claims involve similar issues, the statutes differ on their respective burden of proof allocations; Law 100 places a tougher burden on defendant.

*See Hoyos v. Telecorp. Commc'ns, Inc.,* 405 F.Supp.2d 199, 206–07 (D.P.R.2005) (discussing Law 100 burden shifting framework), *aff'd,* 488 F.3d 1 (1st Cir. 2007); *Mejias Miranda v. BBII Acquisition Corp.,* 120 F.Supp.2d 157, 174 (D.P.R. 2000) (noting burden of production, not merely burden of persuasion, shifts to defendant under Law 100).

██ Under Law 100, plaintiff bears the initial burden of establishing: (1) that she suffered an adverse employment action; (2) that the adverse employment action was not justified; and (3) some basic fact substantiating the type of discrimination alleged. *Hoyos,* 405 F.Supp.2d at 206. Once plaintiff satisfies her initial burden, a rebuttable presumption of discrimination arises. *See* P.R. Laws Ann. tit. 29, § 148; *see also Mejias Miranda,* 120 F.Supp.2d at 173. The employer may rebut this presumption by proving by a preponderance of the evidence that discriminatory animus did not motivate the challenged employment action. *Hoyos,* 405 F.Supp.2d at 206. If the employer rebuts the presumption, then the employee bears the burden of proving discrimination. *Id.* Law 100 does not define "just cause." To fill this gap, courts look to Law 80's guidelines regarding justified dismissals. *Id.* at 207.

██ Medina presents evidence that Popular Finance terminated her assignment despite her positive performance evaluations and that it do so during her seventh month of pregnancy. She also denies that she had attitude problems at work or lacked time flexibility. With this evidence, the burden shifts to Popular Finance to prove that discriminatory animus did not motivate the termination. The court borrows from its Title VII analysis to determine whether Popular Finance carries its burden. As discussed above, genuine issues of fact remain regarding the true reason behind Popular Finance's decision. *See supra* Section III.A.3. Popu-

lar Finance therefore fails to carry its burden of persuasion, and summary judgment on Medina's Law 100 claim is unwarranted. The court reaches the same conclusion with respect to Medina's Laws 69 and 3 claims. *See Mejias Miranda,* 120 F.Supp.2d at 174–75 (retaining Laws 69 and 3 claims where Law 100 claim survives summary judgment).

### 3. Article 1082

Article 1802 is Puerto Rico's general tort statute. The statute provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31, § 5141. Popular Finance argues that Medina is barred from recovering damages under Article 1802 because her claims arise under Puerto Rico's special employment statutes. Medina contends that an employer who fires an employee without just cause may be held liable for damages under Article 1802. According to Medina, the Article 1802 remedies available to an employee fired without just cause include unpaid salary, mental anguish and injury to feelings.

██ United States District Judge Carmen Consuelo Cerezo recently addressed the legal question raised by Popular Finance and resolved it in Popular Finance's favor. *See Denis Rosario v. McConnell Valdes,* Civil 07–1508CCC, 2008 WL 509204, **1–2, 2008 U.S. Dist. LEXIS 13113, at *3–6 (D.P.R. Feb. 21, 2008). Judge Cerezo relied heavily upon a decision of the Puerto Rico Supreme Court, *Santini Rivera v. Serv. Air, Inc.,* 137 D.P.R. 1, 1994 P.R.-Eng. 909,527 (1994). She noted that the *Santini Rivera* court specifically addressed the interplay between causes of action under special employment statutes and Article 1802. She highlighted the *Santini Rivera* court's pronouncement that special employment stat-

utes "are a source of higher-ranking rights that supplant ... those derived from ordinary legislation." *Santini Rivera*, 137 D.P.R. at 5 n. 3. Judge Cerezo also cited a concurrence in *Santini Rivera* which clarifies that "[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under [Article 1802]." *Santini Rivera*, 137 D.P.R at 16 (Hernandez–Denton, C.J., concurring). Finally, Judge Cerezo concluded:

> To the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, [s]he is barred from using that same conduct to also bring a claim under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked.

*Denis Rosario*, 2008 WL 509204, *2, 2008 U.S. Dist. LEXIS 13113, at *5. The court finds Judge Cerezo's reasoning and conclusion persuasive and adopts them here. To this effect, the court will not follow any earlier ruling to the contrary. *See, e.g., Pagan–Alejandro v. PR ACDelco Serv. Ctr., Inc.*, 468 F.Supp.2d 316, 329 (D.P.R. 2006).

Similar to the plaintiff in *Denis Rosario*, Medina bases her Article 1802 claim on the same conduct that supports her employment law claims; she alleges no independently tortious conduct. Accordingly, the court must dismiss Medina's Article 1802 claim.

## IV. Analysis of Claims Against Adecco

Medina's discriminatory termination claims against Popular Finance survives summary judgment. Medina seeks to impose liability on Adecco for Popular Finance's decision to terminate her assignment. Medina also seeks to impose liability on Adecco's for its own job placement-related actions. Adecco contends that, as a temporary employment agency, it cannot be held liable for Popular Finance's pregnancy-related discriminatory termination. Adecco also argues that it did not discriminate against Medina in job placement.

### A. Adecco's Liability for Popular Finance's Actions

Adecco seek summary judgment on Medina's discriminatory termination arguing that it is not her "employer" for Title VII purposes. Adecco further argues that, even if it can be considered Medina's Title VII "employer," it cannot be liable for Popular Finance's discriminatory termination. Medina urges liability on the basis that Adecco and Popular Finance are "joint employers."

Title VII makes it unlawful "for any employer ... to discharge any individual ... because of such individual's" pregnancy. 42 U.S.C. § 2000e–2(a)(1). The statute defines as "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person...." *Id.* § 2000e(b). Title VII liability attaches only in the event of a covered employment relationship. *Camacho v. P.R. Ports. Auth.*, 369 F.3d 570, 573 (1st Cir.2004) (noting covered employment relationship required for ADEA liability).

The court looks to common law agency principles to determine whether Title VII "employer" status exists. *See Alberty–Vélez v. Corporación de P.R. Para La Difusión Pública*, 361 F.3d 1, 6 (1st Cir.2004) (adopting common law agency test to determine existence of employment relationship for Title VII purposes); *see also Camacho*, 369 F.3d at 574 (applying agency principles to employer question un-

der ADEA); *accord Shah v. Deaconess Hosp.,* 355 F.3d 496, 499 (6th Cir.2004); *Barnhart v. N.Y. Life Ins. Co.,* 141 F.3d 1310, 1313 (9th Cir.1998); *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993). In order qualify as an employer (or joint employer) for Title VII purposes, an entity must exercise significant control over the terms and conditions of an individual's employment. *See Camacho,* 369 F.3d at 574; *see also Holyoke Visiting Nurses Ass'n v. NLRB,* 11 F.3d 302, 306 (1st Cir.1993) ("A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment.").

Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Camacho,* 369 F.3d at 574 (quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). No one factor is outcome determinative. Rather, all the facts of an employment relationship must be weighed in order to determine whether that relationship fits within the confines of the employer-employee arrangement. *Darden,* 503 U.S. at 324, 112 S.Ct. 1344.

The extent of Adecco's control over Medina determines the outcome of the joint employer inquiry. Adecco argues that it lacked sufficient control over Medi-

na to constitute her employer for Title VII purposes. Medina avers that Popular Finance and Adecco are joint employers for Title VII purposes. She argues that triable issues remain regarding Adecco's control over her. Medina supports her position with two pieces of evidence: (1) Cardoza's testimony that temporary employees were not Popular Finance employees, Docket No. 87, Exh. B, p. 70, l. 21; and (2) Cardoza's testimony that "the evaluation of temporary employees is made by the temp agency," *id.* at p. 9, l. 9–10.

■ The court agrees with Adecco; under the circumstances of this case, Adecco cannot be considered Medina's joint employer. The uncontested facts reveal that: Adecco placed Medina with Popular Finance; Popular Finance established Medina's daily working conditions; Popular Finance employees supervised and evaluated Medina's day-to-day work performance; Medina reported to work at Popular Finance locations and used their equipment; Medina was required to comply with Popular Finance's dress code and work schedule; Rodríguez, a Popular Finance employee, set Medina's schedule; and Popular Finance determined the duration and extension of Medina's assignments. No fact finder considering these facts could reasonably infer that Adecco exercised the day-to-day control over Medina necessary to render Adecco jointly responsible for Medina's termination. *See Watson v. Adecco Employment Servs., Inc.,* 252 F.Supp.2d 1347, 1356 (M.D.Fla. 2003) (dismissing claim against temporary agency that did not control employee's day to day activities); *Williams v. Caruso,* 966 F.Supp. 287, 296 (D.Del.1997) (holding issuance of paychecks insufficient to render temporary agency employer under agency principles); *Astrowsky v. First Portland Mortgage Corp.,* 887 F.Supp. 332, 333

(D.Me.1995) (holding staffing firm did not exercise sufficient control over plaintiff's employment to constitute employer under federal discrimination laws). *But cf. Riesgo v. Heidelberg Harris, Inc.*, 36 F.Supp.2d 53, 58 (D.N.H.1997) (assuming arguendo client company and temporary agency constitute joint employers). Cardoza's conclusory assertion that temporary employees were not Popular Finance employees and her unsupported allegation that Adecco evaluated its employees do not change this result. They do not raise a triable issue regarding Adecco's right to exercise control over Medina's daily employment.

Medina has failed to raise a triable issue regarding whether Adecco exercised the requisite degree of control over her employment to qualify as a joint employer. Accordingly, there is no basis upon which to hold Adecco liable for her discriminatory termination. For this reason alone, summary judgment in Adecco's favor is warranted on Medina's discriminatory termination claim.

Even assuming Adecco qualifies as a joint employer, it offers another basis upon which the court should grant summary judgment in its favor. Adecco argues that it cannot be held liable for Popular Finance's decision to terminate Medina because Medina cannot show that Adecco knew or should have known of the discriminatory action and failed to take corrective measures within its control. Medina offers no opposing argument.

■ To prevail under a theory of joint employer liability, plaintiff must show that defendant knew or should have known of the discriminatory conduct and failed to take prompt corrective measures within its control. *See Watson*, 252 F.Supp.2d at 1356–57; *cf.* EEOC, EEOC Notice No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms (Dec. 3, 1997), *available at* http://www.eeoc.gov/policy/docs/conting.html (delineating circumstances in which staffing firm may be liable for client company's discrimination). The records contains no evidence that Medina gave Adecco notice of any discrimination she suffered at Popular Finance. Adecco maintained an EEO policy, the terms of which it made Medina aware. Notwithstanding, the record contains no evidence that Medina reported Popular Finance's alleged discrimination to Adecco or that she otherwise informed Adecco that she felt discriminated against. Under such circumstances, the law does not impose liability upon Adecco for Popular Finance's actions.

For the reasons discussed above, the court grants Adecco's summary judgment motion as it pertains to Medina's discriminatory termination claim.

## B. Adecco's Liability for its own Actions

The parties agree that Adecco qualifies as an employment agency. Title VII obligates an employment agency to make job assignments in a nondiscriminatory manner. 42 U.S.C. § 2000e–2(b). Medina alleges that Adecco, in its employment agency capacity, discriminated against her by "intentionally negat[ing] to her a suitable job under her health circumstances." She points out that Adecco knew she was pregnant. She acknowledges that Adecco offered her two positions after her Popular Finance assignment terminated. One position, she states, required her to stand all day; the other job, she highlights, required her to travel more than on hour from her home. She argues that her health prevented her from accepting either position. These facts constitute the complete evidentiary basis upon which Medina

asserts her discriminatory assignment claim.

 The record is devoid of evidence to support Medina's claim that Adecco intentionally, and because of her pregnancy, denied her suitable assignments. The only facts in the record establish that Adecco was aware of Medina's pregnancy; Adecco offered Medina two job assignments; Medina's health circumstances made the assignments difficult; and Medina rejected the positions. No reasonable jury could conclude, based on these facts alone, that Adecco engaged in pregnancy-based discriminatory assignment practices against Medina. Accordingly, summary judgment in Adecco's favor is appropriate.

## C. Supplemental Claims

Medina alleges claims against Adecco under the following Puerto Rico laws: Law 80; Law 100; Law 69; Law 3; and Article 1802. The court can quickly dispense with each of these claims. As discussed above, Popular Finance, not Adecco, terminated Medina's temporary assignment. Accordingly, liability for Medina's allegedly unjustified and discriminatory termination falls upon Popular Finance. *See* P.R. Laws Ann. tit. 29, § 575b ("[W]ith regard to the legislation prohibiting job discrimination ..., as well as the legislation which regulates unjustified dismissal, whoever discriminates against or dismisses the employee ..., be it the temporary employment company or the client company, shall answer for their compliance."). The court therefore grants Adecco summary judgment on her Laws 80, 100, 69, and 3 claims arising out of the termination of her Popular Finance assignment.

Medina's Laws 80, 100, 69, and 3 claims against Adecco arising out of its *own* conduct also fail. First, Medina offers no evidence that Adecco engaged in any conduct violative of Law 80. Second, she offers no evidence to sustain her Laws 100, 69, and 3 claims against Adecco. Each law requires plaintiff to make some showing that an adverse action resulted from discriminatory conduct. Even assuming Medina could show that Adecco took an adverse employment against her, she offers no evidence to demonstrate that any of Adecco's actions resulted from discriminatory conduct. Absent such evidence, she cannot carry her initial burden under Laws 100, 69, and 3. The court therefore grants Adecco summary judgment on her Laws 80, 100, 69, and 3 claims arising out Adecco's own conduct.

Medina has failed to demonstrate that any of Adecco's conduct violated federal or local employment laws. Consequently, the court must dismiss her Article 1802 claim. *See Velez v. Janssen Ortho LLC*, 389 F.Supp.2d 253, 265 (D.P.R.2005) ("[I]nasmuch as the conduct complained of does not violate any of the applicable employment laws it cannot alternatively constitute a tort under Article[ ] 1802 ...."), *aff'd on other grounds*, 467 F.3d 802 (1st Cir.2006).

## V. Conclusion

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** Popular Finance's motion for summary judgment (Docket No. 75) and **GRANTS** in its entirety Adecco's motion for summary judgment (Docket No. 78). The court **DISMISSES** Medina's Title VII hostile work environment and Article 1802 claims against Popular Finance and all of her claims against Adecco. Her Title VII discriminatory termination claim and Laws 80, 100, 69 and 3 claims against Popular Finance survive summary judgment.

**SO ORDERED.**